Smith, J.
Upon the findings of the referee, upon the facts that the practice of certifying checks, by the teller of the Bank of the Interior, was openly done, in the usual course of business, with the knowledge of the officers of the bank, and such checks uniformly dealt with and treated as obligative of the bank, his conclusion of law, that such teller had authority to certify checks and notes, can hardly be doubted, and is clearly correct; though it is more properly an inference of fact than of law.
Assuming, therefore, that the teller was duly authorized to certify checks and notes, when presented at the counter of the bank, in the ordinary course of business,— which is clearly, as *146 far as such authority can be implied, from custom, or allowed, without distinct proof of more extensive power, specially committed to him,— the facts in respect to the liability of the bank upon the $4,000 check and the $5,000 note present different questions, which should be separately considered.
■ The $4,000 check, it appears, was drawn, and certified good, by the teller, before its delivery to the defendants.
When it was presented to the teller for his certificate in respect to its goodness, the account of Plumb, the drawer, was, in fact, good for an amount exceeding the sum specified in this check. It was, therefore, not improper for the teller to certify this check. His certificate, that it was good, was a true representation of the state of the account of Plumb with the bank, and bound the bank to hold and retain the amount for which the check was drawn, to meet it, on presentation by any person by whom it might be held. It was equivalent to the acceptance of a negotiable bill of exchange, in favor of the holder, for that amount, by the bank. (Farm. & Mech. Bank of Kent Co. v. Butchers' & Drovers' Bank, 16 N. Y., 128.)
The defendants received this chéck for value. The referee ' finds that they gave up to Plumb, at the time of the delivery of the check, eight bonds of the Milwaukee and Mississippi Railroad Company, which were then held by them as collateral to two notes of Plumb, and were worth the amount which Plumb then owed them on his said notes, being $8,500 and interest, from the first of January previous; that the check was received and held by the defendant, in lieu of said bonds, and as security for the payment of the balance due on the said two notes of Plumb.
When the check was so delivered to the defendants by Plumb, he requested that it should not be sent into the Bank of the Interior, among the exchanges; and such check was not. presented to the bank for payment till. its failure, which, it appears from the pleadings, occurred in the spring of 1861; —the plaintiff being appointed receiver on the 21st of May, 1861. The cheek is dated March 6, 1858, and was thus retained by the bank, in hand,- upwards of three years.
*147 Upon this statement of the facts, it is quite clear that this check was not received by the defendants in the ordinary course of business. It was payable on presentation; it was equivalent to cash; it was a mere substitute for so much money in bank. It is foreign to the whole office and design of. a check to take and receive it to be held as security, as much as it would to take the same amount in bank bills or coin. When the defendants took this check to hold as security for Plumb’s debt, and agreed not to send it in with the exchange, they knew this was a departure from the usual course of business in respect to checks. If, therefore, it was essential to the plaintiffs’ right to enforce this check as an accepted bill by the Bank of the Interior, that they should . have received it in the ordinary course of business, clearly the defendants could not succeed. They clearly did not so receive it.
. But I do not think the defendants’ right to recover, upon this check, depends upon this condition. The check was, in fact, drawn upon funds in bank, and was accepted, with funds in hand, by the bank. The indorsement, by its teller, upon the check, that it was good, immediately bound the bank to pay it, thereafter, on presentation. It was then an accepted bill, with funds in the hands of the acceptor. It was not an accommodation bill; the bank, having accepted the check, became the principal debtor, and was bound to keep the funds to meet it.' A liability, once incurred, remains until it is discharged, by payment or release. I can see no principle upon which it can be held that the Bank of the Interior ever discharged its obligation to pay this check, or became in any way released therefrom. Lapse of time would not effect such discharge, till the statute of limitations should attach.- In the case of The Farmers' and Mechanics' Bank of Kent County v. Butchers' and Drovers' Bank (supra), the checks were dated February 16, 1852, and certified on their face immediately. They were applied in payment of instalments due upon a subscription to stock, and afterwards deposited as collateral security, and held till February, 1853, before they were presented for payment. *148 It was not considered that delay in their presentation affected the question of the liability of the bank to pay them. Indeed, Judge Comstock, who dissented from the opinion of the court, said that the court below had regarded these acceptances as payable on demand; and, for that reason, the delay in presentation was considered no objection to a recovery against the acceptor. “In my judgment (he said), the court was clearly right, in this construction, and right, also, in the consequence drawn from it, that the certificates, as an acceptance, if duly authorized, are obligations, as in other cases, until paid, or the statute of limitations should attach as a bar.”
I do not see, therefore, upon what principle the judgment below, so far as relates to the four thousand dollar check can be disturbed. •
The question in regard to the note stands upon somewhat different ground.
The presentation of the note at the counter of the bank on its maturity for payment, was in the ordinary course of business ; and so was the making of the certificate then and there indorsed by the teller, certifying that the same was good. The legal effect and force of such certificate was, that the maker had deposited funds in the bank to meet said note, and that the bank then held the same in deposit for that purpose, and would pay the amount upon request. The course of business among the banks at Albany was such as to make such presentation and indorsement equivalent to payment of the note by the maker, and the substitution of the Bank of the Interior as the debtor of the defendants for the amount of the note payable, in fact, in the exchanges on the next day. But the indorsement was, in effect, an absolute engagement on the part of the Bank of the Interior to pay the note, and dispensed with protest or steps to charge the indorser, as much so as if the defendant had actually received the cash on the presentation of the note, instead of taking the certificate of the teller that the note was good. This certificate was in fact false, and made by the teller in violation of his duty, and in fraud of the bank of which he was an officer. *149 But it is found by the referee that the defendant was ignorant bf this fact, and did not know when said note was so presented and certified, that the account of the said Plumb with the Bank of the Interior was not good for the amount of the note.
The defendant was induced by Plumb to hold on to the note after it had been so certified, and not send it in for payment the next day with their exchanges. But I cannot see that this fact affects their rights any more than did delay in the presentation of the four thousand dollar check.' The bank had become the principal debtor, and could not be discharged without payment or release, if the defendants are otherwise entitled to hold them responsible for the note. • The defendant clearly cannot hold the Bank of the Interior responsible upon the false certificate of its teller, except upon the ground that it is a holder of it for value, and received the same in good faith. In this particular, the case stands upon the same ground with the case' of the Farmers' and Mechanics' Bank v. The Butchers' and Drovers' Bank (supra). In that case the certificate was false and fraudulent, and the question was, whether the defendants were liable, and it was held that the plaintiffs being Iona fide holders for value, were entitled to recover. In this case it appears that the defendants having presented the note and obtained the certificate that it was good, took no measures to charge the indorser or enforce payment of the maker till he failed, “ refraining from these acts ” as the referee finds, “ in reliance upon said certificate.”
This relinquishment of the security of the indorser, and' the taking of this certificate in payment of the note, makes the defendants bona fide holders of. it for value, within the case of Young v. Lee (2 Kern., 554), and the cases on this subject; Stalker v. McDonald (6 Hill, 93); Bank of Salina v. Babcock (21 Wend., 499; 20 id., 115).
The statute of frauds has nothing to do with this question. The force of the certificate indorsed on the check and note, in both cases, is an admission of funds in hand to meet the check and note, and an agreement to pay such funds on presentation of the note or check. It is not an engagement to pay the debt *150 of another; but, upon its face, the engagement, in legal effect, to pay their own debt to the party entitled to it. The case of The Farmers' and Mechanics' Bank of Kent County v. The Butchers' and Drovers' Bank, answers this and all the other objections raised to the right of the defendants to recover, upon this check and note.
I see no ground upon which the judgment can be interfered with by this court, and think it should be confirmed.
Denio, Ch. J., Davies, Sutherland and Allen, Js., concurred.